Complainant in this case holds a first mortgage on property in Hunterdon county owned by the defendant Young. There is another, a second mortgage on this property. This was assigned to defendant Mrs. Stevens by the defendant Mr. *Page 608 
Senger. It was purchased with money belonging to the estate of Charles Bartsch, Mrs. Stevens' father, as an estate investment. The Bartsch estate was settled in the New York courts. A decree was entered passing the accounts on the 16th day of October, 1924, and the mortgage in question was distributed as part of the assets of the estate. It was then over due. Apparently, no investigation was made by the beneficiaries as to the soundness of the security. Thereafter it became apparent that the mortgage was in fact a second mortgage. On the 15th of July, 1925, the original decree was re-opened, as the New York law does not permit executors to make investments of this character. Mrs. Stevens' account, with her consent, was surcharged with the amount of the mortgage and it was re-assigned to her. She now alleges that she was induced by Mrs. Senger to invest in this mortgage through fraud, and was assured that it was a first mortgage. She seeks to compel Mrs. Senger to take the mortgage back and pay her the $2,000 in order that she make return of the money to the Bartsch estate as directed by the New York court.
Mrs. Stevens declined to appear in court here, although there was no reason why she could not have done so, and I have therefore not had the benefit of personally seeing her and listening to her examination and cross-examination. Her deposition was taken in New York.
The New York court has directed her to replace $2,000 in the estate. Her theory seems to be that she cannot do this unless she gets the money from this mortgage. No other money will do. The decree, however, seems to be that she repay $2,000 — any $2,000 will do.
In the first place there is yet no proof that Mrs. Stevens has been defrauded of any money whatever.
The foreclosure sale has not yet been held, and it may be that the property will bring enough to pay both mortgages in full. Indeed, counsel for Mrs. Senger insists that such will be the case. Counsel for Mrs. Stevens thinks it doubtful. In any event there is no proof that Mrs. Stevens will lose anything. *Page 609 
Again, this surcharge was made with Mrs. Stevens' consent. An executrix ordinarily is not responsible for poor investments if made by her in good faith and in an honest belief in their value. Had she made this point before the New York court, that tribunal might have held there was no liability on her part and that she could not be charged with notice of the record showing the mortgage to be a second one, inasmuch as she had been lead by the fraud of one in whom she trusted, to believe it to be a first. She accepted the return of the mortgage voluntarily. We come now to the direct question. Did Mrs. Senger fraudulently persuade Mrs. Stevens to take this mortgage, assuring her that it was a first? The answer, of course, must be made after a careful analysis of the testimony. Mrs. Stevens' affidavit of September, 1925, on file in the cause suggests no fraud on the part of Mrs. Senger. Mr. Senger only is accused. In her deposition is the following:
"Q. In other words you mean your `no, no' that you did not tell Mr. Wright that Mrs. Senger had told you that this was a first mortgage? Answer yes or no. A. I said that Mr. Senger had told me it was a first mortgage to Mr. Wright. That's all. In all these ten years you forget."
In Mrs. Stevens' affidavit occurs the following:
"At that time [the time of the mortgage transaction] I was acquainted with Charles P. Senger, of Plainfield, New Jersey, who had been the adviser of said Charles Bartsch from time to time in matters of investment."
This, apparently, with the idea of establishing a position of trust and confidence between Mr. Senger and the estate. It was admitted in open court that this statement is untrue and that Mr. Senger never knew Charles Bartsch. There is in evidence a letter dated September 16th, 1924 — over a year before Mrs. Stevens' interposition in this suit — from the mortgagor saying, "Received your letter dated September 12th, * * * I have made application to the Federal Land Bank for the money that is due you on second mortgage." This she sent without comment to Mr. Senger. *Page 610 
Also it is significant that Mrs. Stevens was unwilling to appear personally in court. Why? Perhaps because she could not explain the contradictions in her various affidavits and testimony.
On the other hand we have the clear and specific denials of both Mr. and Mrs. Senger of any fraud. They both insist that Mrs. Stevens was told, and well knew, it was a second mortgage. We have the statement, to be sure, of one Wright. Mr. Wright was mistaken, especially in view of the fact that that Mr. Senger told him it was a first mortgage, but I believe it was under his direction that Mrs. Stevens made the misstatements I have alluded to. From a careful review of the testimony and the history of the transaction extending over a number of years I am convinced that Mrs. Stevens was thoroughly aware that she was buying a second mortgage.
The first effort in the case was apparently to involve Mr. Senger in the fraud allegation. Mrs. Senger's part in the matter was an afterthought. Mr. Senger cannot, in my opinion, be held to have defrauded either personally or as his wife's agent. Neither can Mrs. Senger.
I will advise a decree in accordance with these conclusions.